O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE D. RUTHERFORD, | ) Case No. CV 11-04433 DDP (MANx) |
| Plaintiff, | ) |
| v. | ) **ORDER GRANTING DEFENDANTS'** |
| | ) **MOTIONS TO DISMISS FIRST AMENDED** |
| FIA CARD SERVICES, N.A., | ) **COMPLAINT** |
| ALASKA AIRLINES, INC., | ) |
| HORIZON AIR INDUSTRIES, INC., | ) |
| | ) [Dkt. Nos. 47, 50 & 73] |
| Defendants. | ) |

Presently before the court are two Motions to Dismiss Plaintiff's First Amended Complaint ("FAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motions and adopts the following order

**I.   Background**

Plaintiff, a resident of Los Angeles, California, works for Alaska, an Alaska corporation whose principal place of business is in Washington. (FAC ¶¶ 5, 7.) Horizon is Washington corporation with a principal place of business in Washington (FAC ¶ 8). FIA, which operates Bank of America's credit card operations, is a

Delaware corporation with a Delaware principal place of business. (FAC ¶ 6).  All Defendants do business in California.  (FAC ¶ 11.)

The Airlines and FIA entered into a marketing partnership (the "Affinity Agreement"), under which FIA agreed to issue "Alaska Airlines" brand credit cards and make payments to Alaska.  (FAC ¶¶ 12, 14, 16.)  The Airlines and Bank further agreed that airline employees would be trained by the airlines and paid by the Bank to market the Alaska credit cards to consumers.  (FAC ¶¶ 19, 21-22.)

Plaintiff alleges that the airlines made a written offer to Airlines employees, under which employees were promised varying levels of payment for submitting credit card applications that the Bank ultimately processed.[1] [2]  (Id. ¶ 20.)  The airlines presented the terms of the Incentive Program and the Bank's offer "through various means including web, email, and flyers."  (FAC ¶ 42.)  Plaintiff alleges that this offer was accepted, and a contract formed (the "Incentive Contract") once an airline employee sent a completed credit card application to the Bank.  (FAC ¶ 27, 29.)  Under the Incentive Contract, the Bank was obligated to pay airline employees up to forty-five dollars per application within a period of approximately two-months.  (FAC ¶¶ 30, 31).  The airlines also

---

[1] A "processed" application contains enough information to allow FIA to approve or reject the application.  (Complaint ¶ 20.)

[2] The FAC is somewhat unclear on the identity of the alleged offeror.  The FAC alleges that "[o]n behalf of itself and the airlines . . . Bank of America offered to pay . . . ." (FAC ¶ 24) (emphasis added).  The FAC also states, however, that "[t]hese offers were made to airline employees in writing by the airlines," and that "[t]he airlines presented Bank of America's offer."  (FAC ¶¶ 26, 44) (emphasis added).  Because the FAC uses the term "Incentive Contracts," these allegations could conceivably refer to separate and distinct contracts.  Plaintiff's opposition, however, refers only to a single "Incentive Program Contract."

2

allegedly occasionally offered employees additional incentives to submit credit applications, such as cash, trips, and prizes. (FAC ¶¶ 50-51.)

In 2007, Plaintiff submitted approximately 1,000 credit card applications completed by members of his church. (FAC ¶ 65.) Over 500 of the applications were ultimately approved by the bank. (Id.) Nevertheless, the Bank never deposited any payment related to the applications into Plaintiff's paycheck. (Id.)

Plaintiff filed this purported class action against FIA and the Airlines on May 23, 2011, alleging causes of action for breach of contract and unjust enrichment. This court dismissed the complaint, with leave to amend, on March 27, 2012. Plaintiff subsequently filed the FAC. The FAC alleges that both the Bank and Airlines entered into a written, unilateral contract (or contracts, see n. 2 supra) with Plaintiff. (FAC ¶¶ 81, 85.) The FAC further alleges that Bank of America breached the contract each time it failed to pay Plaintiff, and that the Airlines breached the contract each time the Airlines did "not ensure" that Plaintiff was paid. (FAC ¶¶ 88-89.)

The FAC also alleges that Plaintiff is an intended beneficiary of the Affinity Agreement between the Bank and the Airlines. (FAC ¶ 92.) Plaintiff alleges that the Airlines and the Bank both had a duty to make payments to Plaintiff, and that the Bank and Airlines breached that duty by failing to pay Plaintiff or failing to ensure payments were made to him. (FAC ¶¶ 93-96.) The Airlines and the Bank now move to dismiss the FAC in its entirety.

\\\
\\\

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   The Incentive Contract

        1.   Choice of Law

As explained in the court's earlier order dismissing Plaintiff's original complaint, this court, sitting in diversity, applies California's choice of law rules to determine whether California or Washington law applies. Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010). California employs several different choice of law analyses. See Arno v. Club Med Inc., 22 F.3d 1464, 1469 n. 6 (Noting conflict among California courts). Some courts, applying a statutory test under California Civil Code § 1646, look to the place of performance or contract formation. See, e.g., Costco Wholesale Corp. v. Liberty Mutual Ins. Co., 472 F.Supp.2d 1183, 1197 (S.D. Cal. 2007).

Other courts have suggested, however, that California's modern approach limits § 1646 analyses to matters of contract interpretation, and that other choice of law questions are more properly analyzed under a "governmental interests" analysis. Frontier Oil Corp. v. RLI Ins. Co., 153 Cal.App.4th 1436, 1459-1460 (2007). Under the governmental interests analysis, the party seeking to invoke foreign law must establish that 1) the foreign law materially differs from California law, and 2) the jurisdictions' interests in applying their own law truly conflict. Pokorny v. Quixtar, Inc., 601 F.3d 987, 994-995 (9th Cir. 2010); Washington Mutual Bank, FA v. Superior Court, 24 Cal.4th 906, 919 (2001). If there is a true conflict, the court must then weigh the

competing interests and apply the law of the state whose interest stands to be most impaired.  Id.

In instances where the parties have not made a choice of law, as is the case here, some courts apply a third test, based on Section 188 of the Restatement (Second), Conflict of Laws (the "Restatement").  See, e.g. ABF Capital Corp. v. Berglass, 130 Cal.App.4th 825, 838 (2005).  The Section 188 approach seeks to determine which state "has the most significant relationship to the transaction and the parties."  Restatement § 188(2).  The relevant factors include the place of contract formation, the place at which the contract was negotiated, the place of performance, the location of the contract's subject matter, and the location of the parties. Id.; See also Shannon-Vail Five v. Bunch, 27- F.3d 1207, 1211 (9th Cir. 2001).  Having thus determined which state has the most significant relationship to the matter, the court then applies that information to factors set out in section 6(2) of the Restatement, such as the interstate system's needs, the various states' respective interests in the issue, the protection of reasonable expectations, and the provision of uniform, predictable results. Berglass, 130 Cal.App.4th at 838.

The majority of these factors weigh in favor of applying California law to this dispute.  At the outset, Plaintiff is himself a resident of California, where both the Bank and the Airlines also have a significant business presence.  The court agrees with Plaintiff that the subject matter of the written contract is not a relevant factor.  (Opp. to Alaska Mot. at 5).

The place of contract formation and performance, however, also appears to be California.  Plaintiff argues that the place of

6

contract formation and performance "could be numerous states and Canada." (Opp. to Airlines' Mot. at 5.)  While another plaintiff may have formed a unilateral contract with Defendants and performed it in a number of states, Plaintiff here has not.  Indeed, in what appears to be an artfully pled attempt to avoid California law, Plaintiff's FAC does not specify the location from which he sent the completed credit card applications to the Bank.  The FAC does allege, however, that Plaintiff gathered the applications from members of his church.  Common sense dictates that Plaintiff, a resident of Los Angeles, also attends church in California. Furthermore, one of the writings alleged to comprise the contract states, "If customers hand you back the application, it must be dropped into the mail as soon as possible." (FAC, Ex. 8.) Given the urgency with which the contract requires applications be mailed, Plaintiff would have been required to mail the applications to the Bank soon after collecting them from fellow churchgoers.

In light of the fact that the Section 188(2) factors weigh heavily in favor of California, the interstate system's needs, the various interests of the respective states, consideration of the parties' reasonable expectations, and the need for uniformity would be best served by the application of California law to this dispute.  Accordingly, California law applies to the Incentive Contract.

### 2. Statute of Limitations

The Airlines argue that under California law, Plaintiff's claim is time barred. (Airlines' Mot. at 12).  California law sets out a two-year statute of limitations for oral contracts and a

four-year statute of limitations for written contracts.  Cal. Code Civ. Pro. §§ 337(1), 339(1).

Plaintiff responds that he has alleged a continuing breach, and therefore the statute of limitations is not at issue.  (Opp. to Bank Mot. at 6-7.)  Indeed, the FAC does state that the Bank's "failure to pay all sums owed, and the airlines' failure to ensure that all sums are paid . . . is continuing." (FAC ¶ 68.) Plaintiff further appears to argue that the statute of limitations is not a factor because he has pled that neither he nor other, unnamed class members have been paid.  (FAC ¶¶ 64, 66, 67).

At this stage, however, no class has yet been certified, and only Plaintiff's individual claims are at issue.  If a named plaintiff cannot himself establish a live case or controversy, he may not seek relief on behalf of himself or any other member of a purported class.  Lierboe v. State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).  The court therefore looks only to the allegations pled as to Plaintiff himself.  Plaintiffs only alleges a single instance of performance under the alleged written contract.  That performance and acceptance of the unilateral contract occurred in 2007.  Plaintiff did not file a breach of contract claim until May 23, 2011.[3]  Thus, assuming without deciding that a written contract exists, California's four-year statute of limitations on a written contract has run.  Plaintiff's breach of contract claim based on the Incentive Contracts is, therefore, dismissed with prejudice.

---

[3] In perhaps another instance of artful pleading, Plaintiff does not specify the month in which he submitted the credit card applications to the Bank.

B. The Affinity Agreement

The parties agree that Delaware law controls the Affinity Agreement, of which Plaintiff asserts he is an intended third-party beneficiary. (Affinity Agreement, § 18(e)). Under Delaware law, a third party beneficiary may, in some cases, have standing to enforce a contract. Triple C Railcar Serv., Inc., v. City of Wilmington, 630 A.2d 629, 633 (Del. 1993). The contracting parties' intent to view the third party as a beneficiary is, however, essential. Id. In other words, "[i]n order for there to be a third party beneficiary, the contracting parties must intend to confer the benefit." Pierce Assocs., Inc. v. Nemous Found., 865 F.2d 530, 535 (3d Cir. 1988) (quoting Ins. Co. of N. Am. v. Waterhouse, 424 A.2D 675, 679 (Del.Super. 1980). The contracting parties' intent is determined by the language of the contract itself. Id.

Here, Plaintiff argues that Section 7(d), which describes an employee incentive program, evinces the parties' intent to confer third party beneficiary status upon airline employees. (Opp. at 15-16.) The court disagrees. The Affinity Agreement expressly states that there are no third party beneficiaries to the contract. (Affinity Agreement § 18(g) (emphasis added).) The court agrees with Plaintiff that, in some cases, the structure of an agreement may indicate an attempt to create third party beneficiaries even in the absence of language to that effect. Indeed, even language disclaiming third party beneficiaries may not be dispositive when contradicted by other contractual provisions granting rights to third parties. See, e.g., Caldwell Trucking PRP v. Rexon Tech. Corp., 421 F.3d 234, 245 (3d. Cir. 2005) That is not, however, the

9

situation here. Here, the employee incentive program section comprises a single paragraph of an agreement that spans over fifty-five pages. The express language of Section 18(g) is not explicitly contradicted by any other provision of the Affinity Agreement. Plaintiff therefore lacks standing to bring his claim for breach of the Affinity Agreement, which must therefore be dismissed with prejudice.[4]

C. Unjust Enrichment

Plaintiff's Third Cause of Action for Unjust Enrichment is not an independent cause of action under California law. Jogani v. Superior Court, 165 Cal.App.4th 901, 911 (2008); Serna v. Bank of America, N.A., No. CV 11-10595 CAS; 2012 WL 2030705 * 11 (C.D. Cal. June 4, 2012). Plaintiff's unjust enrichment claim is therefore dismissed with prejudice.

**IV. Conclusion**

For the reasons stated above, the Motions to Dismiss are GRANTED, with prejudice.

IT IS SO ORDERED.

Dated: November 16, 2012

DEAN D. PREGERSON
United States District Judge

---

[4] Though not raised by either party, it appears that even if Plaintiff did have standing to bring a third party claims, such a claim would be time-barred. 10 Del. C. § 8106.